**VAUGHAN**

v.

**PETROLEUM CONVERSION CORP. et al.**

Civ. A. No. 4392.

United States District Court,
D. Connecticut.

July 24, 1953.

James A. Vaughan, pro se.
Morgan P. Ames, Cummings & Lockwood, Stamford, Conn., for defendant.

**176**

SMITH, District Judge.

Plaintiff in this case asks this court to afford him relief under Rule 60(b) F.R. C.P., 28 U.S.C., against the enforcement of a Delaware judgment against him, which was registered in this court on April 8, 1953, pursuant to the provisions of 28 U.S.C. § 1963.

This court [Hincks, J.] on April 17, 1953, issued an order restraining defendants from taking further action on the judgment "until the further order of this court". Defendant moved to dismiss this restraining order, and to dismiss the suit, and in the alternative, to require plaintiff to post security to protect him against damage.

This court [Smith, J.] on June 10, 1953 ordered the stay terminated unless bond in the amount of $40,000 be filed by plaintiff before June 12, 1953 to secure payment of the judgment of the Delaware Court. On June 12, 1953, the court [Smith, J.] modified this order to permit the filing by defendant of a certificate of judgment in the town clerk's office, in the town of Greenwich, staying execution on the judgment, and granting plaintiff until July 6, 1953 to file the bond.

The judgment complained of arose out of the following circumstances, according to defendant's allegations. Defendant Petroleum Conversion Corporation was adjudicated a bankrupt by the United States District Court for the District of Delaware on August 8, 1948. As a scheduled creditor of defendant, plaintiff James A. Vaughan, on November 19, 1948 filed two claims with the trustee in bankruptcy—a claim for payment of a promissory note, and a claim for unpaid balance due for legal services rendered to defendant under retainer of $300 per month. Defendant-corporation had been previously engaged as a cross-complainant in lengthy litigation with one Dickinson, in which Vaughan was also involved as a cross-complainant acting on behalf of a group of stock subscribers to the Petroleum Conversion Corporation. This litigation involved also a determination of rights between the subscribers and the corporation to the amount recovered. The Dickinson litigation resulted in a recovery of certain sums by Vaughan on behalf of the stock subscribers, but no recovery for the corporation.

The trustee in bankruptcy recommended in his report given at the first meeting of creditors, that the corporation take no appeal from the Dickinson case decision. This report was approved by the creditors on January 19, 1949. The trustee, at this same meeting, asked aid and authorization from the referee to proceed against Vaughan for all fees paid him by the corporation for legal and executive services during the period of the Dickinson litigation when Vaughan was allegedly representing conflicting interests. The referee at this point answered:

"It is not before me to decide about this thirty-three thousand— that will have to be on an independent suit, after you take your steps in between, assuming you do—I don't know whether you are going to have that in mind."

The trustee, on August 26, 1949, filed objections to Vaughan's claims, and at the close of taking testimony filed a set-off and counterclaim on October 3, 1949 for the fees and salaries received by Vaughan while acting for the allegedly-conflicting interests. Vaughan opposed this with an affidavit, verified September 27, 1949, objecting to the trustee's filing of the counterclaim when the referee had refused to authorize the trustee to take any action against Vaughan, and closed the record. Vaughan later left with the trustee an "Answer" addressed to the merits of the dispute. Vaughan, relying on the referee's rulings, neither called witnesses nor introduced defenses to the counterclaim. The Petroleum Conversion Corporation, on March 15, 1949, objected formally to the adoption of summary jurisdiction over the dispute; Vaughan, on April 26, 1950, when questioned by the referee on this point in open court, orally adopted these challenges and objections. The referee as-

sumed and exercised summary jurisdiction over the issue, and on July 6, 1950, filed, and on July 7, 1950 refiled his findings of fact, conclusions of law, and opinion sustaining the trustee's counterclaim against Vaughan on grounds Vaughan served conflicting interests during the period he accepted fees and salaries from the corporation and at the same time represented the Rinke subscribers in the Dickinson litigation. On July 13, 1950, Vaughan filed written protest to the assumption and exercise of summary jurisdiction by the referee. The referee entered his final order on September 7, 1950, and denied a petition by Vaughan for rehearing on September 27, 1950. The Delaware District Court affirmed the final order on August 24, 1951, In re Petroleum Conversion Corp., 99 F.Supp. 899, and the Court of Appeals for the Third Circuit affirmed the judgment of the District Court on May 16, 1952. 196 F.2d 728. On January 12, 1953, certiorari was denied by the United States Supreme Court. Vaughan v. Petroleum Conversion Corp., 344 U.S. 917, 73 S.Ct. 346, 97 L.Ed. 707.

The trustee in bankruptcy of Petroleum Conversion Corporation registered in this district the judgment in his favor obtained against plaintiff in the District Court for the District of Delaware.

Plaintiff brought this action under Rule 60(b) to obtain relief from the Delaware judgment.

Defendant moves to dismiss for lack of jurisdiction over the subject matter and for failure to state a claim on which relief can be granted on the ground that the matter is res judicata by virtue of the judgment of the District Court of Delaware upholding the determination of the referee in bankruptcy.

Plaintiff contends that this court may grant relief against the Delaware judgment because he was surprised by the referee's later ruling and deprived of an opportunity to defend the claim, and secondly because his defense of res judicata was erroneously overruled.

It is difficult to determine in what class of actions to obtain relief from judgments plaintiff would place his claim here.

He was undoubtedly disappointed by the final result of the ruling of the referee. Yet, although he must have known that the law on summary jurisdiction was in a state of development [see 27 Journal of the National Association of Referees in Bankruptcy, p. 90] and that he could raise and have determined the question of the referee's power, he filed an answer to the set-off and counterclaim, was present and testified at a later creditors' meeting, and filed proposed findings of fact and conclusions of law with the referee. Only after the referee had filed his findings and opinion did plaintiff file written objection to the referee's exercising summary jurisdiction on the merits of the set-off and counterclaim. He was held to have waived objection to summary jurisdiction. The Delaware Court had jurisdiction to determine the factual issue of waiver.

There was certainly there no such lack of opportunity to be heard as to oust the Delaware court of jurisdiction.

So far as the plaintiff's claim of res judicata is concerned, it appears to be based on rulings in the actions in New Jersey and New York in which plaintiff appeared as a representative party for the group known as the Rinke Agency Subscribers suing parties-defendant alleged to have swindled the bankrupt and the Rinke Agency subscribers.

Plaintiff claims that the courts ruled that he was a proper party to appear for the Rinke Agency subscribers, although an officer and attorney for the bankrupt, which also had a claim against the defendants.

Even if this be so, and the courts were satisfied that plaintiff could properly represent the Rinke Agency subscribers, despite his conflict of interests, there was no issue in those cases between plaintiff and the bankrupt as to whether his services to the bankrupt were made valueless by his interest in the Rinke group.

The plaintiff individually and the bankrupt are not shown to have been at

issue in the New York or New Jersey actions over the same claims litigated before the referee in Delaware.

No defense of res judicata was available to plaintiff on the counterclaim in Delaware, therefore.

Even had the defense of res judicata been erroneously overruled by the referee, the District Court in Delaware and the Court of Appeals, absent some fraud or deception practiced on the Delaware courts, relief from the Delaware judgment could hardly be granted here.

Plaintiff has asked relief under Rule 60(b), F.R.C.P., which states:

"(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

■ There is substantial doubt whether this court could grant relief on a motion, against a judgment obtained in another court, and registered here under 28 U.S.C. § 1963. See Hadden v. Rumsey Products, 2 Cir., 196 F.2d 92, at page 95; Moore, Commentary on the U.S.Judicial Code [1949] pp. 385, 386. But there are greater obstacles. Even if, upon the facts alleged, the court might decide that plaintiff has made a showing of "surprise" or "mistake" under Rule 60(b)(1), since the referee's final order was entered September 7, 1950, more than a year has expired since the order was entered. It seems clear that, under Rule 60(b) the time continues to run even though an appeal be taken from the judgment or order. See Moore's Federal Rules and Official Forms, Comment on Rule 60, pp. 278, 279.

■ Plaintiff attempts to avoid this by claiming the referee's decision was "void", and hence the one-year limitation does not apply. Such contention is difficult to accept. Plaintiff does not deny that he filed pleadings, and participated in argument as to the merits of the trustee's set-off claims against him. However, he claims that these actions did not constitute consent to summary jurisdiction by the Bankruptcy Court, under the rule in Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97, inasmuch as he entered a formal objection to summary jurisdiction before entry of the final order. The Cline case notes, however, that consent is a "question depending on the facts of the particular case." Id.

323 U.S. at page 100, 65 S.Ct. at page 157. The District Court of Delaware, in affirming the final order of the Bankruptcy Referee, disagreed with plaintiff, and held that he had consented to summary jurisdiction of the referee and had failed to make timely objection, where he had answered on the merits and made no objection until after he had learned from the referee's opinion that he had lost. In re Petroleum Conversion Corp., 99 F.Supp. 899. The Court of Appeals affirmed this decision. Id., 196 F.2d 728. Plaintiff asks this court to allow an attack upon those findings of fact and law upon the basis of his allegation that he was lulled into participation by means of earlier rulings by the bankruptcy court that it had no summary jurisdiction. But unless this court is to upset the findings of the Delaware court, the judgment sought to be enforced here can hardly be called "void". This course would not be open to this court, even if it desired to do so. Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244. Such evidence as plaintiff alleges is not new evidence, nor was it evidence unavailable to him when he took his direct appeals.

Plaintiff asks, in the alternative, relief under Rule 60(b)(6). But by its very terms, Rule 60(b)(6) excludes a reason which can be classified under one of the preceding five subdivisions. See Klapprott v. U. S., 335 U.S. 601, 613, 69 S.Ct. 384, 93 L.Ed. 266. And it would seem that the allegations in the complaint, at best, make out a case under 60(b)(1). Cf. Klapprott v. U. S., supra, 335 U.S. at pages 613, 614, 69 S.Ct. at page 389–390. See Ackermann v. U. S., 340 U.S. 193, 197–199, 71 S.Ct. 209, 95 L.Ed. 207.

Nor can plaintiff succeed here if his complaint is considered as "an independent action to relieve a party from a judgment, order, or proceeding", as covered by the last two sentences of Rule 60(b). This exception was designed in the 1938 promulgation to preserve proceedings which, before the promulgation of the new rules, could have been initiated after the expiration of the term. Wallace v. United States, 2 Cir., 1944, 142 F.2d 240, 244. In the 1946 revision of Rule 60(b), insertion of the qualifying adjective "independent" and the addition of what is now the last sentence, restricts the exception to preserve only those proceedings as, before the new rules, were independent suits. Moore's Federal Rules, 1951, p. 279. Of these, *audita querela* would lie only for matters of defense or discharge arising after rendition of judgment, and which could not have been taken advantage of otherwise. Moore, Federal Practice, 1938, p. 3266. Audita querela would not lie where the party complaining had had a legal opportunity of defense and had neglected it. Avery v. United States, 1870, 12 Wall. 304, 20 L.Ed. 405. Such would seem to be the case here. The principal foundation of an original action to secure relief from a judgment was fraud. Moore, op. cit., p. 3267. There is no such allegation here. No original action to secure relief would lie where petitioner negligently failed to press the matter defensively in the original action, Id., p. 3270, and the original bill could be maintained in equity only where based on facts of which the injured party could not have availed himself at law because he was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents. Marshall v. Holmes, 141 U.S. 589, 596, 12 S.Ct. 62, 35 L.Ed. 870. In this case, even if it is assumed that plaintiff was prevented from presenting a full defense before the bankruptcy referee, it would seem he had full opportunity to raise on appeal the very issues he seeks to raise here.

No basis appears in the complaint in this action upon which this court should upset the judgment of the Delaware District Court, whether this action be considered a motion under 60(b) or an independent action for relief from the judgment.

The motion to dismiss is granted.

Judgment may be entered for the defendants, dismissing the complaint herein.