**In re Curtis Ray CATRON, Debtor.**

**Bankruptcy No. 91–25827–T.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

March 3, 1995.

Joseph T. Liberatore, Portsmouth, VA, for debtor.

J.L. Hauser, Virginia Beach, VA, for Central Fidelity Bank.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Hearing was held September 15, 1994, on the confirmation of debtor's Amended Plan of Reorganization dated June 21, 1994. Creditor Central Fidelity Bank objected to confirmation on the ground that the plan improperly attempted to modify a consent order which held that the debt owed to Central Fidelity was nondischargeable. Excluding the dispute underlying Central Fidelity's objection, the court stated that it would approve confirmation based upon resolutions reached among the remaining parties and directed the parties to fashion a confirmation order. The court took the dischargeability matter under advisement and directed counsel to submit proposed findings of fact and conclusions of law.

After hearing the respective arguments of counsel and after reviewing the material submitted by counsel, the court finds that the plan does not improperly modify a consent order, does not discriminate unfairly, and is fair and equitable. Accordingly, the court will enter an order overruling Central Fidelity's objection.

### Findings of Fact

Debtor Curtis R. Catron is a partner of C & G Enterprises, a Virginia General Partnership, and a guarantor for notes of C & G to Creditor Central Fidelity Bank. Because C & G failed to meet its obligations under the notes, Central Fidelity pursued debtor for collection under the notes.

On October 17, 1991, debtor filed a Chapter 11 bankruptcy petition. Pursuant to Fed. R.Bankr.P. 4007(c), the deadline for filing a complaint to determine dischargeability of debt was January 24, 1992. Neither debtor nor Central Fidelity filed a complaint to determine the dischargeability of the debt owed to Central Fidelity.

On April 30, 1992, Central Fidelity moved for relief from the automatic stay imposed pursuant to 11 U.S.C. § 362. On September 4, 1992, this court entered a consent order whereby the parties settled the matter on relief from stay. Pursuant to the settlement and consent order, the note was modified, and debtor agreed to reaffirm his guaranty obligation up to $500,000.00. The consent order stated:

IT IS FURTHER SPECIFICALLY ORDERED that the reaffirmation provision provided for the aforesaid stipulation of settlement be and hereby are approved such that the guaranty and reaffirmation by the Debtor of the amount of $500,000.00 shall not be dischargeable by the Debtor i[n] this or any other bankruptcy proceeding.

Simultaneously with entering into the consent order, debtor and Central Fidelity entered into a reaffirmation agreement whereby debtor reaffirmed his guaranty obligation up to $500,000.00.

Pursuant to 11 U.S.C. § 524(c)(4), the reaffirmation agreement, which was incorporated into the settlement agreement and consent order, provided that debtor could rescind the agreement by giving written notice to Central Fidelity at any time prior to the granting of his discharge or within sixty days after the agreement was filed with the court, whichever was later.

On February 25, 1993, debtor timely exercised his right under the reaffirmation agreement and under § 524(c)(4) and rescinded the reaffirmation agreement. Debtor's counsel certified that he gave counsel for Central Fidelity written notice of the recision.

On June 21, 1994, debtor filed an amended plan and disclosure statement which both stated:

The said Reaffirmation Agreement with Central Fidelity Bank has been rescinded. Notwithstanding any previous agreement,

any claim against Mr. Catron arising from an agreement, contract or other cause of action (other than those of Mrs. Morrison), prior to the Order confirming this Plan shall be discharged under 11 U.S.C. § 1141 and treated for distribution purposes as a Class 2 claimant.

The plan proposes to pay debtor's former wife, claimant under Class 1, $3,500.00 per month through July 1, 2005, and other payments pursuant to various settlement agreements. Under the plan, Class 2 claimants, unsecured creditors including Central Fidelity, are entitled to share, on a pro rata basis, $35,000.00 realized from the sale or disposition of debtor's interest in Orchard Square Associates, L.P., and CDP Partnership after payment of administrative expenses and priority claims. Of the total number of Class 2 claimants who voted on the plan, more than one-half in number and two-thirds in amount accepted the plan.

On August 23, 1994, Central Fidelity objected to confirmation of debtor's amended plan, alleging that the plan improperly attempted to modify the consent order. Central Fidelity argues that the consent order provided that the $500,000.00 could not be discharged by debtor in this or any other bankruptcy case and that therefore debtor has waived his right to have the debt discharged.

### Conclusions of Law

■ The court does not accept Central Fidelity's argument that debtor, by entering into the settlement agreement, has waived his right to have the debt discharged. In order to waive the discharge of a particular debt,[1] the debt must be reaffirmed pursuant to 11 U.S.C. § 524 regardless of any agreement to except the debt from discharge. *See Doug Howle's Paces Ferry Dodge, Inc. v. Ethridge (In re Ethridge)*, 80 B.R. 581, 585–86 (Bankr.M.D.Ga.1987). A contrary holding would be in direct conflict with the intent of Congress to give debtors a fresh start. *Id.* at 586. Thus, any waiver of the discharge of a particular debt must follow the procedures

prescribed in the bankruptcy code and bankruptcy rules.

■ Section 524(c) articulates the requirements for a valid reaffirmation agreement "whether or not discharge of such debt is waived." 11 U.S.C. § 524(c). It is evident from the literal language of the statute that "Congress was greatly concerned that a debtor waiving dischargeability of a particular debt be afforded the procedural protections provided in § 524(c), regardless of any pre-existing agreement as to nondischargeability." *See Chilcoat v. Minor (In re Minor)*, 115 B.R. 690, 695 (D.Colo.1990).

Pursuant to the procedural requirements of § 524(c), the agreement must "contain a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim." 11 U.S.C. § 524(c)(2). Furthermore, the reaffirmation agreement becomes enforceable only if "the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim." 11 U.S.C. § 524(c)(4).

In this instance, debtor entered into the reaffirmation agreement with Central Fidelity; however, prior to discharge, debtor rescinded the agreement on February 25, 1993. Based on these facts, the reaffirmation agreement is unenforceable.

■ In addition, the court's approval of the settlement agreement did not except the debt from discharge; the court's order approving the settlement agreement cannot be given preclusive effect as to dischargeability because it was not a "final judgment on the merits," *see Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir.), *cert. denied*, 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990), and an adversary proceeding invoking proper juris-

---

1. A debtor may waive discharge pursuant to 11 U.S.C. § 1141(d)(4). However, under this section, debtor waives discharge of all debt rather than waiving discharge of a particular debt. *See Royal Bank of Canada v. Hunt (In re Hunt)*, 124 B.R. 200, 208 (N.D.Tex.1991).

diction must have been initiated before the court can declare a debt non-dischargeable. *See* Fed.R.Bankr.P. 7001.

 The inquiry does not stop here because the court will not afford a debtor the protection of the bankruptcy laws if he proceeded in bad faith. As the Fourth Circuit has held, "a debtor who attempts to induce a creditor to part with additional consideration on the promise of reaffirmation, while intending to have the entire debt discharged, might, under some circumstances be found to have sought the protection of the bankruptcy laws in bad faith." *See Arnhold v. Kyrus,* 851 F.2d 738, 741 (4th Cir.1988).

 However, there is no evidence that debtor acted in bad faith. Debtor did not fraudulently induce Central Fidelity into forfeiting its right to file a dischargeability complaint. The deadline for filing a complaint to determine dischargeability of debt was January 24, 1992. Neither debtor nor Central Fidelity filed a complaint to determine the dischargeability of the debt to Central Fidelity within the proscribed time.

The events leading to the entry of the consent order on the relief from stay matter and the signing of the reaffirmation agreement occurred long after the deadline for filing a complaint. Central Fidelity moved for relief from stay on April 30, 1992. This court entered the consent order and approved the reaffirmation agreement on September 4, 1992. Accordingly, the court finds no evidence that debtor acted in bad faith,[2] and the debt should not be excepted from discharge based upon an objection to confirmation.

The court will enter a separate order overruling Central Fidelity's objection to confirmation.

**2.** I note that the holding may have been different had debtor entered into the settlement agreement prior to the expiration of time to file a complaint or had debtor not rescinded the reaffirmation agreement. However, because those are not the facts currently before me, I will not address the outcome under such circumstances.

**3.** Pursuant to 11 U.S.C. § 1129(a), the court may confirm a debtor's proposed Chapter 11 plan

Because debtors' plan "does not discriminate unfairly, and is fair and equitable[,]" [3] the court will enter an order confirming the plan based on the agreements represented to the court on September 15, 1994, upon receipt from counsel of the requested order.

only if all of the elements of 11 U.S.C. § 1129 are met. *See* 11 U.S.C. § 1129(a). One such criterion found in § 1129(a)(8), requires each class to accept the plan or be unimpaired under the plan. However, under 11 U.S.C. § 1129(b), a bankruptcy court can confirm a plan of reorganization without approval by all impaired classes if the plan "does not discriminate unfairly, and is fair and equitable...." 11 U.S.C. § 1129(b)(1).